# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RAMONA PUSKAR, )<br>    Plaintiff, )<br>)<br>v. )<br>)   CAUSE NO.: 2:11-CV-178-PRC<br>ROGELIO DOMINGUEZ, Individually )<br>and in his Professional Capacity as Former )<br>Sheriff of Lake County, )<br>    Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 19], filed by Defendant Rogelio Dominguez on July 20, 2012. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

## PROCEDURAL BACKGROUND

On April 4, 2011, Plaintiff Ramona Puskar filed her Complaint against Defendant Rogelio Dominguez in Lake County Superior Court, Lake County, Indiana. In the Complaint, Ms. Puskar alleged that she was improperly terminated from her employment with the Lake County Sheriff's Department ("LCSD") in December 2009, on the basis of her race, age, and political affiliation. She also alleged that she was terminated in violation of her Constitutional procedural due process rights. On May 20, 2011, Sheriff Dominguez then removed the action to this Court.

About two months later, on June 29, 2011, the parties jointly stipulated to the dismissal of Defendant Members of the Lake County Council. Then, on October 4, 2011, Sheriff Dominguez filed an answer. On July 20, 2012, Sheriff Dominguez filed the instant Motion for Summary Judgment. Ms. Puskar, however, did not file a response and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case; therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving

party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Northern District of Indiana Local Rule 56-1 requires the moving party to file with the Court a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). In response, the opposing party is obligated to file with the Court a "'Statement of Genuine Issues' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (addressing the equivalent local rule for the United States District Court for the Northern District of Illinois) (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has routinely sustained "the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts").

In the present case, Sheriff Dominguez, as the moving party, has submitted a Statement of Material Facts. However, Ms. Puskar has not submitted a response brief, much less a Statement of Genuine Issues; therefore, the following facts asserted by Sheriff Dominguez and supported by admissible evidence are considered to exist without controversy for the purposes of this Motion for Summary Judgment.

The Lake County Council ("Council") consists of seven members and serves as the legislative and fiscal body of Lake County. The Council is responsible for adopting a county budget, levying property taxes, and appropriating revenue derived from property taxes and other revenue sources for expenditure by each county department. Under Indiana law, the annual budget adopted by the Council is organized into different fund accounts that separate receipts and expenditures by their source, purpose and function. Lake County's General Fund is the general operating fund and is the main source of revenue for the each county department.

In 2007 and 2008, the State of Indiana enacted a number of statutes in an effort to address an ongoing budget crisis. First, in 2007, Indiana enacted a statute that permitted counties to fund local operating budget increases by adopting either a county adjusted gross income tax or an additional county option income tax. In 2008, another statute was enacted that, in essence, "froze" Lake County's annual property tax levy at the level of its 2007 levy until Lake County would adopt a county-wide one percent income tax to offset property taxes. Also, in 2008, the Indiana legislature adopted a state-wide property tax cap that limited the amount property taxes could be increased to fund county operations. But because Lake County never adopted a county option adjusted gross income tax, its annual property tax levy that generated the annual revenue stream for the General Fund remained "frozen" at the 2007 property tax levy amount. As a result, since 2008, Lake

County's "frozen" property tax levy combined with the state property tax caps resulted in an ongoing budget crisis for Lake County, which required annual reductions to balance county budgets.

On July 3, 2008, the Council's Finance Committee issued a "Report of Lake County Council Finance Committee In Response To The House Bill 1001 Tax Caps" that contained a detailed analysis of the budget crisis and the effect it would have on Lake County's General Fund and operations. The Finance Committee found that, due to the budget crisis, the 2009 General Fund budget should be reduced by at least $15 million and estimated that there would be a $15.2 million shortfall in the 2010 budget. Several weeks later, on July 30, 2008, the Council adopted Ordinance 1301-D, which imposed a "hiring freeze" in each county department with the "freeze" being renewed each year. As a result, by fall 2009, Lake County projected that it would have a budget shortfall of $10.5 million.

On September 16, 2009, the Council issued a written notice to all elected officials and department heads advising them to revise their 2010 budget estimates to an amount that was 15 percent less than their 2009 department budgets. The budget revisions were to include a 10 percent reduction in the payroll budgets. Then, on October 1, 2009, the Council instructed its financial advisor to make a 15 percent reduction in payroll in those departments that had not implemented the mandatory 10 percent reduction. Council President Blanchard next met with Sheriff Dominguez to explain that the LCSD was to reduce its 2010 payroll budget to a level that was 10 percent less than its 2009 payroll budget and, if the LCSD failed to meet this goal, the Council would randomly cut employees from LCSD's 2010 budget.

As a result of the Council's mandate, Sheriff Dominguez instructed his staff to develop a budget plan that could satisfy the Council's goals by preparing a "blind list" of employees by budget

6

number without identifying names, in the event employees would need to be eliminated from the 2010 budget. To facilitate the creation of the "blind list" of employees, Sheriff Dominguez instructed the unit commanders to rate each of their employee's performance, attitude, and ability; the effect the employee's loss would have on the unit's performance; and the seniority-level of the employee if two employees were equal in all other respects. Sheriff Dominguez did not participate in the preparation of the "blind list" because he believed that each unit commander was in the best position to evaluate the performance, attitude, and abilities of the employees working in their unit.

On October 9, 2009, Sheriff Dominguez delivered a document entitled "Lake County Sheriff's Department 2010 Budget Plan Reductions—Totaling $7,937,665" to each Council member. The budget plan sought to incorporate the mandatory 2010 budget cuts by increasing revenue sources and transferring employees, but it did not propose to eliminate any employee positions. Because the Council rejected Sheriff Dominguez's initial budget plan, on November 13, 2009, he presented a second proposal to the Council; this plan called for the elimination of 19 employee positions. The Council, however, also rejected Sheriff Dominguez's revised budget plan.

On November 30, 2009, Sheriff Dominguez delivered a memo to Council President Blanchard, which included a "blind list" of 18 employees, which included Ms. Puskar's name, identified by budget number only, that could be eliminated from the 2010 budget. On that same day, Ms. Puskar was notified that she would be terminated on December 4, 2009. Ms. Puskar, who had worked for the LCSD for over 23 years, was an employee-at-will, did not have a contract of employment with LCSD, and was not a member of a collective bargaining unit. Approximately one and a half years later, on August 1, 2011, Ms. Puskar resumed her employment with LCSD.

7

**ANALYSIS**

Local Rule 7-1(a) provides that "[t]he court may rule on a motion summarily if an opposing party does not file a response before the deadline." N.D. Ind. L.R. 7-1(d)(4). The trial court's interpretation and application of its Local Rules is subject to great deference. *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003); *Tenner v. Zurek*, 168 F.3d 328, 331 (7th Cir. 1999). In fact, a trial court has the authority to strictly enforce its local Rules, even if summary judgment results. *See Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge.*, 24 F.3d at 921-22 (upholding the trial court's strict enforcement of local rules on summary judgment).

As described above, Federal Rule of Civil Procedure 56(e) provides that "[i]f a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, summary judgment is appropriate when the non-movant does not respond, and the "motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

Sheriff Dominguez moves for summary judgment on all claims in Ms. Puskar's Complaint. The Court now considers each claim in turn.

**A.     Title VII Claim**

In the case at bar, Sheriff Dominguez argues that Ms. Puskar has failed to raise a genuine issue of material fact as to her Title VII race discrimination claim and that the undisputed facts indicate that Sheriff Dominguez is entitled to judgment as a matter of law. (Def.'s Mem. at 15-17).

8

Here, Sheriff Dominguez specifically points out that there is no evidence of race discrimination to support Ms. Puskar's claim and she has not rebutted Sheriff Dominguez's reduction-in-force ("RIF") reason for her termination, which was necessitated by Lake County's ongoing budget crisis. Thus, according to Sheriff Dominguez, even if Ms. Puskar could establish a prima facie case of discrimination, she has failed to produce evidence that Sheriff Dominguez's reason for her termination under the RIF was a pretext for discriminating against her on the basis of her race.

However, in her Complaint, Ms. Puskar asserts that she was terminated as a result of Sheriff Dominguez's efforts to displace Caucasian employees in favor of Hispanic employees. (Compl. ¶¶ 11-12). Here, Ms. Puskar claims that although Sheriff Dominguez claimed there was a legitimate RIF in place, she was "terminated while less qualified, less educated, [and] less experienced Hispanic employees were retained." *Id.* ¶ 12. Therefore, Ms. Puskar avers that the RIF was, in essence, used as a vehicle for discriminating against her on the basis of her Caucasian race.

Title VII of the Civil Rights Act of 1964 provides, in part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove racial discrimination under Title VII, a plaintiff may proceed either under the direct method or the indirect method. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).

To survive summary judgment under the direct method, the plaintiff "must demonstrate a triable issue as to whether discrimination motivated the adverse employment action of which he complains." *Davis v. Time Warner Cable of Se. Wis., LP*, 651 F.3d 664, 672 (7th Cir. 2011) (citing

9

*Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)). Direct evidence can take the following forms: (1) an outright admission by the decisionmaker that the prohibited action was undertaken, or (2) circumstantial evidence of a discriminatory reason by the employer. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). The plaintiff can establish the latter through a long chain of inferences, which has been described as "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Davis*, 651 F.3d at 672 (quoting *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). Circumstantial evidence typically falls into one of the following categories:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (quoting *Sun v. Bd. of Trustees*, 473 F.3d 799, 812 (7th Cir. 2007)) (citing *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Alternatively, a plaintiff may proceed under the indirect, burden-shifting method established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method, a plaintiff must first establish a prima facie case of discrimination by providing evidence indicating that: "(1) he is a member of [a] protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010) (citing *Hilderbrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003)). The Seventh

Circuit, however, has "modified the test to apply to situations where members of majority groups believe they were subject to employment discrimination." *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (citation omitted). Thus, in such cases of "reverse discrimination," the first element of the prima facie case cannot be used and, instead, a plaintiff must show "background circumstances" sufficient to demonstrate that the employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." *Id.* (citation omitted).

If the plaintiff meets her burden of establishing a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell*, 411 U.S. at 802; *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). If the defendant provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to offer evidence indicating that "the proffered reason is actually a pretext for illegal discrimination." *Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010) (citing *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007)).

Ms. Puskar has failed to establish a case of race discrimination under either the direct or indirect methods of proof. Herein, the only evidence she presents is contained in her Complaint, which consists of her bare allegation that she was terminated while less qualified and less educated Hispanic employees were retained. Thus, Ms. Puskar claims that the RIF was merely a pretext for discriminating against her on the basis of her Caucasian race. But here Ms. Puskar offers no evidence to satisfy the requirements of a prima facie case of discrimination and she has not rebutted Sheriff Rodriguez's rationale for her termination; namely, that the Council required him to establish

11

a budget plan to reduce LCSD's 2010 payroll budget by 10 percent, which resulted in the elimination of 18 positions, as a result of the ongoing budget crisis. Accordingly, because Ms. Puskar's race discrimination claim amounts to nothing more than mere speculation, there is no genuine issue of material fact with regard to her discrimination claim and Sheriff Dominguez is entitled to judgment as a matter of law. *See Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998) (a plaintiff "cannot rely on speculation and unsupported assertions in order to avoid summary judgment").

**B.    First Amendment Claim**

Sheriff Dominguez next argues that Ms. Puskar has failed to raise a genuine issue of material fact as to her First Amendment retaliatory discharge claim and that the undisputed facts show that he is entitled to judgment as a matter of law. (Def.'s Mem. at 12-15). First, Sheriff Dominguez asserts that, with respect to Ms. Puskar's First Amendment claim, she cannot establish a prima facie case of retaliation because she cannot show that her political affiliation was a motivating factor in the loss of her job as she has no evidence to suggest that Sheriff Dominguez knew of her political affiliation. *Id.* at 12-14. Sheriff Dominguez further points out that Ms. Puskar has produced no evidence to dispute his nonpolitical reason for her termination. *Id*. at 14-15. But in her Complaint, Ms. Puskar avers that Sheriff Dominguez violated her First Amendment rights by terminating her employment in retaliation for her political affiliation. (Compl. ¶ 22).

"[H]iring, firing, or transferring government employees based on political motivation violates
the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). To

establish a prima facie case of a politically motivated discharge, "a plaintiff must show two things: first, that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision." *Id.* Thus, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers." *Id.* If a plaintiff can successfully establish a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision. *Id.*; *Nelms*, 153 F.3d at 818.

In this case, Ms. Puskar has failed to present any evidence to support her retaliatory discharge claim brought under the First Amendment. Ms. Puskar's conclusory statement that she was terminated from her position in December 2009 on the basis of her political affiliation is simply not enough to permit this Court to infer that she engaged in constitutionally protected conduct and that her conduct was a motivating factor in Sheriff Dominguez's decision to terminate her employment. In other words, there is no evidence to suggest that there is a connection between Ms. Puskar's alleged political affiliation and Sheriff Dominguez's termination decision. Nor has Ms. Puskar offered any evidence that Sheriff Dominguez knew of her political affiliation or that his decision to terminate her employment was anything other than a nonpolitical decision stemming from Lake County's ongoing budget crisis. Accordingly, because Ms. Puskar has failed to show that her political affiliation was a motivating factor in his termination decision, Sheriff Dominguez is entitled to summary judgment as a matter of law on Ms. Puskar's First Amendment claim.[1] *See Nelms*, 153 F.3d at 818.

---

[1] To the extent, Ms. Puskar may be asserting that she was terminated on the basis of her political affiliation in contravention of state law, she has presented no evidence to establish such a claim. (Compl. ¶ 22).

**C.     Section 1983 Claim**

Sheriff Dominguez avers that Ms. Puskar has failed to raise a genuine issue of material fact with respect to her § 1983 procedural due process claim and that the undisputed facts again indicate that he is entitled to judgment as a matter of law. (Def.'s Mem. at 18-20). Here, Sheriff Dominguez avers that Ms. Puskar's claim cannot stand because she was an employee-at-will and did not have a protected property interest in her employment with LCSD. *Id.* But in her Complaint, Ms. Puskar brings her § 1983 claim appearing to contend that Sheriff Dominguez engaged in practices in contravention of existing policies regarding the RIF and terminated her employment without "meaningful procedural due process and grievance procedures." (Compl. ¶ 18).

The "Fourteenth Amendment guarantees individuals the right to due process when a state or local government deprives them of life, liberty, or property." *Kivett v. Marion Cty. Sheriff's Dep't*, No. 1:05-cv-348, 2007 WL 906470, at *8 (S.D. Ind. Mar. 22, 2007) (citation omitted). When a public employee claims that she has been terminated without due process, the court first "determine[s] whether the defendant[] deprived the plaintiff of a protected liberty or property interest, and if so, then [the court] assess[es] what process was due." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (citation omitted). However, public employees "who serve only 'at will' or at the pleasure of their employers may have a desire in continued employment but they do not have a property interest." *Kivett*, 2007 WL 906470, at *8 (citing *Lalvani v. Cook Cty.*, 269 F.3d 785, 791 (7th Cir. 2001)). Thus, a public employee has a property interest only when she has "a legitimate claim of entitlement, usually arising by statute or contract." *Id.* Typically, that entitlement exists when "an employee cannot be denied employment unless specific conditions are met." *Id.* (citing *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 589 (7th Cir. 1992)).

Ms. Puskar has failed to establish a cognizable § 1983 claim that she was deprived of procedural due process as a result of her termination from LCSD. Here, the only evidence offered by Ms. Puskar to substantiate her Section 1983 claim is her conclusory allegation that Sheriff Dominguez engaged in practices in contravention of existing policies regarding the RIF and terminated her employment without "meaningful procedural due process and grievance procedures." (Compl. ¶ 18). Because Ms. Puskar's claim is based on speculation and she has produced no evidence establishing that she had a legitimate claim of entitlement or a protected property interest in her employment with the LCSD, Sheriff Dominguez is entitled to judgement as a matter of law with regard to her § 1983 claim. *See Nelms*, 153 F.3d at 818.

**D.     Age Discrimination**

Sheriff Dominguez asserts that Ms. Puskar has failed to raise a genuine issue of material fact with respect to her age discrimination claim and, as a result, he is entitled to judgment as a matter of law. (Def.'s Mem. at 17-18). Specifically, Sheriff Dominguez contends that Ms. Puskar has failed to establish a prima facie case of age discrimination and, even assuming that she could produce evidence to satisfy the prima facie case requirements, she has not shown that "but for" her age Sheriff Dominguez would not have terminated her employment. *Id.* However, in her Complaint, Ms. Puskar seems to allege that Sheriff Dominguez discriminated against her on the basis of her age because she was terminated and replaced by a substantially younger employee who was treated more favorably. (Compl. ¶ 15). In the alternative, she asserts that she was discriminated against on the basis of her age because substantially younger employees were retained by Sheriff Dominguez. *Id.*

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer

15

to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may survive summary judgment under either the direct or indirect methods of proof. *Fleishman v. Cont'l Cas. Co.*, —F.3d— , 2012 WL 4944321, at *2 (7th Cir. Oct. 18, 2012). In order to establish a prima facie case of age discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was performing her job well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in her protected class were treated more favorably. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010). But a plaintiff cannot prevail on her ADEA claim unless she can show that her age was the "but for" cause of her termination. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S.167, 180 (2009). In *Gross,* the Supreme Court held that:

> [A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Id.*

Here, Ms. Puskar has failed to establish an age discrimination claim under the ADEA. The only evidence offered by Ms. Puskar to assert her claim is her conclusory allegation in her Complaint that she was terminated and replaced by a substantially younger employee or Sheriff Dominguez retained substantially younger employees. (Compl. ¶ 15). Because Ms. Puskar has again based her claim on speculation and failed to produce any evidence that her age was the "but for" cause of Sheriff Dominguez's termination decision, he is entitled to judgment as a matter of law with regard to her age discrimination claim. *See Nelms*, 153 F.3d at 818.

In sum, when viewing the evidence in the light most favorable to Ms. Puskar, she has failed

to raise a genuine issue of material fact with respect to her Title VII race discrimination claim, First Amendment retaliatory discharge claim, § 1983 procedural due process claim, and ADEA discrimination claim. Accordingly, the Court grants summary judgment in favor of Sheriff Dominguez as to all of Ms. Puskar's claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [DE 19] and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Rogelio Dominguez and against Plaintiff Ramona Puskar as to all claims in Plaintiff's Complaint.

The Final Pre-Trial Conference and Trial settings are hereby **VACATED**.

SO ORDERED this 26th day of October, 2012.

                                                 s/ Paul R. Cherry
                                                 MAGISTRATE JUDGE PAUL R. CHERRY
                                                 UNITED STATES DISTRICT COURT

cc:     All counsel of record